PBOVOSTY, J.
The accused was convicted of murder and sentenced to be hanged, and has appealed.
On December 1, 1901, one James Williams, a white man, was murdered by a negro named Mack Lee, in the parish of Avoyelles. Mack Lee escaped, leaving, as we understand, his wife behind him; and was no further heard from. In April, 1910, a negro by the name of Guy Fenner was arrested in San Antonio, Tex., for crime. It was thought he was Mack Lee. Accordingly, he was brought to Avoyelles to be tried for the crime of 1901. On the way, when the train stopped at Opelousas, some persons came on board, and one of them said he identified him as Mack Lee. At Whiteville, ten miles before reaching Eola, a Mr. O’Quinn, came 'on board and again identified him, and told him he ought to be hanged. The prisoner was manacled and fettered; and all this put him in great fear. The sheriff, who had him in charge, told O’Quinn not to scare the man any more than he was already. At Eola, some 30 miles from Marksville, the parish seat, they left the train and took a carriage, the sheriff and a deputy sheriff being in the carriage with the prisoner. The sheriff and the deputy plied him with ques *1080 tions. The deputy frankly admits that “my object was to have him tell it to me ox-tangle himself up to find out whether or not he was the one.” The sheriff “asked him how he could account fox- those who identified him; and I told him, ‘Guy, there is no one that knows better than you if you are the right man or not,’ and I said, ‘If I was in your place and was the right man, I would try and effect a compromise.’ ” The prisoner maintained that he was not Mack Lee, but Guy Eenner. After he had been in jail seven days he made a' confession to one of the deputy sheriffs, in the presence of the deputy who had plied him with questions in the carriage to try and have him “tangle himself up.” The deputy to whom he confessed asked him why he had concluded to confess to him when he had refused to confess to the sheriff; and he answered, “I am a good judge of human nature, and I know you are a good man.” The sheriff and the deputies testified that they had made xxo threats axxd no promises, and had offered no hopes or inducements to the prisoner, and that the confession was entirely free and voluntary. We do not think it was. Even if the man had known himself not to be Mack Lee, he would have had good reason to be fearful. He was in the grip of the law; among strangers; manacled and fettered; men were coming to him and saying they identified him as the murderer, and that he ought to be hanged. The advice of the sheriff, under these circumstances, that it would be better for him to compromise, or, in other words, to confess (“to compromise” could not, under the circumstances, mean anything else than to confess, since a confession was all the man had to offer to the state by way of compromise) must have sunk deep iixto his mind; and it may not be surprising that after ruminating over it for a week in jail he should have concluded to accept and act upon it; and that for doing so should have chosen from among the persons around him that one in whose face he thought he had observed an absence of harshness.
“Confessions should be closely scrutinized by the courts to make certain that instrumentalities intended merely for the vindication of the law be not converted into engines of oppression and wrong. The imprisonment, the interrogatories, the circumstances surrounding the accused at the time, should be taken into account in detei-mining whether ®r not the statements were voluntary.” Marr’s Crim. Juris. 647.
In State v. Alphonse, 34 La. Ann. 9-19, this court said:
“The prisoner might natxxrally conclude that the officer believed he was guilty, and that every one else shared that belief, and the idea of a false confession be thus suggested to his mind, with a view to some advantage in the mitigation of punishment or otherwise.”
The rule is that inducements offered by a person in authority will vitiate a confession. 12 Cyc. 469; Whart. Crim. Ev. (8th Ed.) §§ 651, 673; Greenleaf on Ev. 264; Id. 392, 393; Arch, Or. Pl. & Pr. vol. 1 (13th Ed.) 388, 305, 306.
The fact of there having been a homicide and of its having been murder not being disputed, and the sole question before the jury being as to the identity of the prisoner with Mack Lee, the wife of Mack Lee was put upon the stand by the defense, and asked whether the prisoner was her husband. Objection was made that the wife could not testify for or agaiixst her husband, and was sustained. The reason assigned by the learned trial judge was that he was satisfied that the prisoixer was Mack Lee. The rule is that it is for the judge to pass upon the cornpeteney of witnesses. Wigmore on Ev. § 489; and therefore it would' seem that it was for the judge to decide whether the woman was or not the prisoner’s wife, and to exclude her testimony if she was. But the rule is also that the identification of the accused as the person who- committed the *1082 crime is a question for the jury (14 Cye591); and also that the judge is forbidden to express an opinion on the facts of the case. Now, by excluding the witness as being the wife of the prisoner, the judge would be identifying the prisoner as Hack Lee, thereby expressing an opinion upon the facts qf the case; in fact, expressly adjudging the prisoner guilty, since the very and sole question before the jury was as to the identity of the prisoner with Mack Lee. We find here, therefore, a conflict of rules. And the situation is further complicated by the fact that, by allowing the woman to testify, the judge would be virtually deciding that the prisoner was not Mack Lee, and thus expressing an opinion upon the facts adverse to the state. The situation was, no doubt, peculiar, but, nevertheless, offered no reason, we think, .for departing from the rule that the competency of witnesses is a matter for the court, and not for the jury, to pass upon. Rulings on such interlocutory points are reviewable by this court on the facts, but in the present case the facts have not been brought up. All complication, or awkwardness, in the situation may be avoided in such a case by retiring the jury before the objection to the competency of the witness is made.
On the day of the trial, but before the trial, the court allowed the district attorney to amend the indictment, over the objection of the accused, by changing the name of the person said to have been murdered from John Williams to James Williams; and to change the date of the crime from Dec. 1, 1902 to Dec. 1, 1901.
Rev. St. § 1047, expressly authorizes changes like'these to be made.
Another question presented is as to the separation of the jury. There was a separation. And it was of a character to be fatal to the verdict, unless accused or his counsel knew of it before verdict, and yet failed to call the court’s attention to it until after verdict. Whether accused or his counsel had or not such knowledge before verdict is left doubtful by the record.
The question as to postponement of the trial need not be considered • as it cannot arise again.
Judgment set aside and ease remanded for further trial.